## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PERRY SHALLEY, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| FLEET CREDIT CARD SERVICES, LP | : | CIVIL ACTION NO.:  02 CV 4709 |
| and FLEET CREDIT CARD, LLC | : | J. Green |
| | : | |
| Defendants. | : | |

---

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

---

McKISSOCK & HOFFMAN, P.C.
1700 Market Street, Suite 3000
Philadelphia, PA  19103-3930
Attorneys for Defendants

On the Brief:

Maureen P. Fitzgerald
Melissa B. Gorsline

# TABLE OF CONTENTS

TABLE OF AUTHORITIES.................................................................................

I.    PRELIMINARY STATEMENT ........................................................ 1

II.   PROCEDURAL HISTORY ............................................................... 3

III.  STATEMENT OF UNDISPUTED FACTS ...................................... 3

    A.  THE PARTIES................................................................................ 3
    B.  PLAINTIFF'S EMPLOYMENT WITH FLEET................................. 4
    C.  PROBLEMS WITH PLAINTIFF'S PERFORMANCE BEGIN ............ 5
    D.  PLAINTIFF'S FMLA LEAVE AND FLEET'S REORGANIZATION ... 6
    E.  PLAINTIFF'S PERFORMANCE PROBLEMS CONTINUE ............... 7

IV.   LEGAL ARGUMENT ...................................................................... 9

    A.  SUMMARY JUDGMENT STANDARD .......................................... 9

    B.  PLAINTIFF'S FMLA "EQUIVALENT POSITION" CLAIM IS BARRED BY THE STATUTE OF LIMITATIONS.............................................................. 10

    C.  SHALLEY HAS CONCEDED FLEET RETURNED HIM TO AN EQUIVALENT POSITION AFTER THE EXPIRATION OF HIS FMLA LEAVE............................... 12

    D.  THERE IS NO CAUSAL CONNECTION BETWEEN PLAINTIFF'S FMLA LEAVE AND HIS TERMINATION................................................................... 15

CONCLUSION .................................................................... 17

## <u>TABLE OF AUTHORITIES</u>

**Cases**

Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986) .................................................... 9

Baltuskonis v. U.S. Airways, Inc., 60 F.Supp.2d 445 (E.D. Pa. 1999) ........................... 15

Bond v. Sterling, Inc., 77 F.Supp.2d 300 (N.D.N.Y. 1999) ........................................15, 16

Celotex Corp. v. Catrett, 477 U.S. 317 (1986) ........................................................... 9, 10

Chaffin v. John H. Carter Co., 1998 WL 19624 (E.D. La. 1998) .................................. 16

Childers v. Joseph, 842 F.2d 689 (3rd Cir. 1988) ......................................................... 10

Dillon v. Carleton, 997 F.Supp. 1155 (M.D. Fla. 1997) ................................................ 15

Equimark Commercial Fin. Co. v. C.I.T. Financial Services Corp., 812 F.2d
   141 (3rd Cir. 1987) ................................................................................................. 10

Garcia v. Fullbright & Jaworski, L.L.P., 1996 WL 544371 (S.D. Tex. 1996) ............... 16

Hodgens v. General Dynamics Corp., 144 F.3d 151 (1st Cir. 1998) .............................. 16

Lempres v. CVS, Inc., 916 F.Supp. 15 (D.D.C. 1996) ................................................... 12

Lujan v. National Wildlife Foundation, 497 U.S. 871, 888 (1999) ................................ 10

McCowan v. VOP, Inc., 1995 WL 519818 (N.D. Ill. 1995) .......................................... 16

Munizza v. State Farm Mutual Auto Insurance Co., 103 F.3d 139 (Table) 1996
   U.S. App. LEXIS 32870 (9th Cir. 1996) ................................................................. 16

Oswalt v. Sara Lee, 889 F.Supp. 253 (N.D. Miss. 1995) ............................................... 15

Patterson v. Alltel Info Services, Inc., 919 F.Supp. 500 (D. Me. 1996) ......................... 13

White v. Westinghouse Electric Co., 862 F.2d 56 (3rd Cir. 1988) ............................. 9, 10

**Statutes and Regulations**

28 U.S.C. § 1441(a) ............................................................................  3

29 U.S.C.A. § 2612(a)(1)(d) (West 2001) ..............................................  11, 13

29 U.S.C.A. § 2614(a)(1) (West 2001)..............................................  11, 12, 13

29 U.S.C.A. § 2615(a)(2) ....................................................................  15

29 U.S.C.A. § 2617(c)(1) (West 2001)......................................................  11

29 C.F.R. § 825.215(f) ........................................................................  12

29 C.F.R. § 825.216(a)........................................................................  13

## I.    **PRELIMINARY STATEMENT**

This is an action brought under the federal Family and Medical Leave Act (FMLA) by Perry Shalley, a former Analyst who worked for Fleet Credit Card Services at its Horsham, Pennsylvania, facility.  Following his termination for excessive absenteeism, tardiness, and poor work performance, Shalley asserted claims under the FMLA.  Prior to, and after, his FMLA leave, no less than four separate supervisors repeatedly warned Shalley that his poor attendance, tardiness, and incomplete/insufficient work product were causing problems.  In January 2000, prior to going out on FMLA leave, Shalley signed a counseling statement in which he acknowledged that he needed to pay more attention to arriving at work on time.  Nevertheless, even after returning from FMLA leave and even after working under a different supervisor, Shalley's tardiness and absenteeism continued.  Moreover, three separate supervisors noted that Shalley was not completing his work on time and that the work he did complete contained numerous deficiencies.

In February 2000, in an incident completely unrelated to work, Shalley injured his back at home as a result of twisting while getting up from a seated position.  He advised Fleet that he was unable to work and was placed on leave under the FMLA from February 21, 2000, through May 12, 2000.  As early as January 2000, well prior to his FMLA leave, Shalley was aware that major reorganizational changes would be occurring in his sector of employment with Fleet.  Just as anticipated, in March 2000, Fleet Credit Card Services underwent reorganization.  Shalley was informed of the reorganization while he was out on FMLA leave, and he was also informed that as a result of the reorganization, he would report to a new supervisor.  Significantly, Shalley was not the only individual assigned to a new supervisor.  Although he was assigned to work under a new supervisor, Shalley's pay, benefits, and grade level remained the same.  When he returned to

work on May 12, 2000, Shalley reported to his new supervisor.  Unfortunately, within weeks after working at his new assignment, Shalley's old job performance problems resurfaced.  His new supervisor, Anthony Beavers, just like his previous supervisor, Jeff Healy, was forced to issue reprimands to Shalley regarding Shalley's attendance and substandard job performance. Shalley received no less than three written reprimands from Beavers during May, June, and July 2000.  Despite Beavers' efforts, Shalley did not change his behavior.  As a result, and in a desperate attempt to work out some type of solution, Fleet reassigned Shalley to a new supervisor, Larry Farrell.  At the end of July 2000, Farrell met with Shalley to review the status of Shalley's assignments and to set clear goals for Shalley.  Despite the efforts of Farrell and despite the efforts of Healy (before Shalley's FMLA leave) and Beavers (after Shalley's FMLA leave), Shalley's performance did not improve, and his tardiness continued  unabated. Consequently, Fleet terminated Shalley's employment on July 31, 2000.

Fleet now moves for summary judgment dismissing Plaintiff's Complaint in its entirety. The first count of the Complaint should be dismissed for several reasons.  First, Shalley's claim that he was not returned to an "equivalent position" as required under the FMLA is time barred inasmuch as Shalley returned to work from his FMLA leave and began working at his new position on May 12, 2000.  Thus, the two-year statute of limitations on Shalley's claim began to run on May 12, 2000.  However, Shalley did not file his Complaint alleging violations of the FMLA until June 12, 2002, fully one month after the expiration of the statute of limitations. Second, even if the statute of limitations infirmity were ignored, Shalley's claim is without merit inasmuch as he acknowledged that his new position placed him at the same salary level, benefits level, and grade level as the position he held prior to FMLA leave.  Third, Shalley cannot make any causal connection between his termination on July 31, 2000, for legitimate business reasons,

and his FMLA leave during February through May 2000. The uncontroverted evidence is overwhelming that Shalley was terminated for repeated failure to respond to informal and formal warnings regarding his tardiness, attendance, and substandard work performance.

## II.  PROCEDURAL HISTORY

Subsequent to his termination, Shalley filed his Complaint in the Pennsylvania Court of Common Pleas, Philadelphia County, on June 12, 2002. Thereafter, pursuant to 28 U.S.C. §1441(a), Defendant Fleet timely removed Plaintiff's Complaint to federal court based on federal question jurisdiction. After a series of schedule changes, Fleet, through its attorneys, was finally able to take Plaintiff's deposition on December 26, 2002. The discovery period is closed. This matter is now ripe for summary judgment.

## III.  STATEMENT OF UNDISPUTED FACTS

### A.  The Parties

1.      Plaintiff, Perry Shalley (hereinafter "Shalley"), is a 43-year-old man who has held various jobs with several employers over the years working in the banking and credit financing industry. (See Plaintiff's Complaint, Exhibit "1"; Plaintiff's December 26, 2002 Deposition, p. 225, attached hereto as Exhibit "3").

2.      Defendants, Fleet Credit Card Services, LC and Fleet Credit Card, LLC, [hereinafter "Fleet"], maintained an office located in Horsham, PA and were engaged in the business of credit card services and financing. (See Defendants' Answer, Exhibit "2").

PRV_Motion-SJM-Memo of Law/GFLANAGAN

B.    **Plaintiff's Employment With Fleet**

3.     In October 1997, Shalley began employment with Advanta, as a Decision Support Analyst II – a grade level 17 position within Advanta's organizational structure.  His base salary was $61,000, and he received a signing bonus. (See Plaintiff's Dep., Ex. 3, pp. 12, 68-71).

4.     In mid-1998, Fleet acquired Advanta and effectively became Plaintiff's employer. Shalley remained employed as a Decision Support Analyst at the same grade level within Fleet's Customer Development Relationship Management division ("CDRM").   (See Plaintiff's Dep., Ex. 3, pp. 71, 82).

5.     A major aspect of Plaintiff's responsibilities as an analyst within CDRM involved the database "Smartmove," which analyzed data of prospective and existing customers who transfer balances from other creditors to Fleet when opening a new account.  Plaintiff spent approximately 80% of his time working on Smartmove analysis and related matters. (Plaintiff's Dep., Ex. 3, pp. 72, 100-04).

6.     In May 1999, Fleet promoted Shalley to Director of Analysis -- a grade level 20 position with a salary of $76,000 and a target bonus of 20%.  In accepting this position, Plaintiff moved out of Fleet's CDRM division and transferred to Fleet's New Product Development or Customer Information division.  (Plaintiff's Dep., Ex. 3, pp. 85, 92, 94).

7.     In his capacity as Director of Analysis, Shalley reported to John Witterschein ("Witterschein") and continued to be responsible for data analysis, and also oversaw outside consultants and provided input for new product development. (Plaintiff's Dep., Ex. 3, pp. 110-112).

8.     In October 1999, Witterschein resigned from Fleet and Shalley began reporting to Jeff Healy ("Healy") within Fleet's Customer Information division.  (Plaintiff's Dep., Ex. 3, pp. 115, 118).

C.     **Problems With Plaintiff's Performance Begin**

9.     Within months after becoming Plaintiff's supervisor, Healy became dissatisfied with Shalley's performance.  On January 20, 2000, Healy met with Plaintiff to discuss specific problems, including Plaintiff's mistakes made in performing a home equity analysis project, repeated failures to provide weekly updates in standard format, Plaintiff's failure to properly review an Attrition Tracking report he had prepared and consequent failure to detect mistakes made.  Shalley's deficiencies caused problems within Fleet's marketing department.  (See Affidavit of Jeff Healy, attached hereto as Exhibit "4"; Plaintiff's Dep., Ex. 3, pp. 142, 145).

10.     Healy counseled Plaintiff on January 20, 2000.  During that counseling Healy admonished Shalley for his tardiness in reporting to work and emphasized to Shalley the need for him to arrive at work at a consistent hour.  He advised Plaintiff that he was to be accountable for projects and was expected to perform at a higher level.  Mr. Healy reminded Plaintiff that formal evaluations would be prepared in March.  (See Affidavit of Jeff Healy, Ex. 4; Plaintiff's Dep., Ex. 3, pp. 142, 145).

11.     In March 2000, Healy prepared a formal evaluation of Shalley's performance and recommended a 0% increase in pay.  The evaluation indicated that Shalley had acknowledged his performance problems and his lack of motivation. (See Affidavit of Jeff Healy, attached as Ex. 4; March 2000 Fleet Performance Appraisal, attached as Exhibit "5").

D.    **Plaintiff's FMLA Leave and Fleet's Reorganization**

12.    On February 14, 2000, Plaintiff injured his back at home as a result of twisting while getting up from a seated position.  He advised Fleet that he would be unable to work and was, consequently, placed on leave under the Family and Medical Leave Act from February 21, 2000 through May 12, 2000.  (Plaintiff's Dep., Ex. 3, pp. 36-38, 59-60).

13.    At some point in January of 2000 -- prior to his injury -- Plaintiff became aware of a pending major reorganizational change at Fleet whereby Fleet's New Product Development /Customer Information division would be merged with Fleet's CDRM division. (Plaintiff's Dep., Ex. 3, pp. 120-21).

14.    On March 8, 2000, Healy called Plaintiff at home and explained the implementation of this major reorganizational change and informed Shalley that as a result of the reorganization, Shalley would be reassigned to Jack Nui's ("Nui") team within Fleet's CDRM division.  In that new position, Shalley would now report to Anthony Beavers ("Beavers").  A major business reason for Shalley's reassignment was the fact that the Smartmove work was now under Nui's authority.  Given Shalley's past experience with and knowledge of Smartmove, it made sense for Shalley to be reassigned so he could continue work with Smartmove.  (Plaintiff's Dep., Ex. 3, pp. 158-59, 161-62; Jeff Healy Affidavit, Ex. 4).

15.    Significantly, Fleet reassigned a number of other employees in addition to Shalley.  The reorganization affected numerous other Fleet employees.  For instance, just like Shalley's reassignment, Fleet reassigned another employee, John Carter, from Healy's team to Nui's team.  (See Plaintiff's Dep., Ex. 3, pp. 153, 159, 160, 164-66; Jeff Healy Affidavit, Ex. 4; Fleet Organizational Charts, attached hereto as Exhibit "6").

16.     As a result of Shalley's reassignment to Nui's team, Shalley's pay, benefits, and grade level remained the same. (Plaintiff's Dep., Ex. 3, pp. 161-62, 164).

**E.     Plaintiff's Performance Problems Continue**

17.     On May 12, 2000, Plaintiff returned from his FMLA leave to work at Fleet under the direct supervision of Anthony Beavers.  Like Healy, Beavers soon developed concerns about Plaintiff's job performance.   To underscore his dissatisfaction with Shalley's performance, Beavers gave Plaintiff three negative performance evaluations.  (Plaintiff's Dep., Ex. 3, pp. 166, 169-70).

18.     On May 23, 2000 and June 30, 2000, Beavers issued Formal Counsel or Reprimands to Shalley due to Plaintiff's substandard performance. These reprimands dealt with Plaintiff's inability to develop any tracking for certain variable rate accounts, his failure to meet deadlines, and his lack of technical understanding of certain software programs.  Just as Healy had done in January 2000 (prior to Shalley's FMLA leave), the new supervisor, Beavers, reprimanded Shalley for repeated tardiness for failure to report to work before 10:00 a.m. and for failure to notify Fleet when absent from work. (See June 30, 2000 Fleet Formal Counsel, attached hereto as Exhibit "7").

19.     His supervisor informed Shalley that a follow-up review would take place on July 19, 2000.  The follow-up review was intended to evaluate Shalley's progress.  Shalley signed Fleet's Formal Counsel form, acknowledging his understanding that the failure to show immediate and sustained improvement would necessitate further action, including termination of his employment. (Id.).

20.     On July 21, 2000, Plaintiff received another Formal Counsel/Reprimand from Beavers based upon Shalley's continued inability to complete the Smartmove analysis and

continued failure to meet deadlines.  In this reprimand, Beavers also noted the errors in the analyses Plaintiff did produce.  In addition, Beavers once again counseled Shalley regarding his continued failure to report to work on time. (See July 21, 2000 Fleet Formal Reprimand, attached hereto as Exhibit "8").

21.     Effective July 24, 2000, Fleet reassigned Shalley within CDRM to work for the Risk Management/Operations Department under the direct supervision of Larry Farrell ("Farrell") and the overall supervision of Diane Arthur ("Arthur").  Shalley was advised that his July 21, 2000, Reprimand served as final warning that any type of attendance issue, such as tardiness, unexcused absence or failure to meet expectations of his work assignments or any violation of the prior written warnings would be grounds for termination. (Id).

22.     In the reassignment to work for Farrell and Arthur, as in the previous reassignment, Shalley's salary and grade level remained unchanged. (Plaintiff's Dep., Ex. 3, p. 191).

23.     On July 24, 2000, Plaintiff met with Farrell and Arthur to review his new assignments.  During this meeting, Farrell and Arthur advised Shalley that these assignments must be complete, accurate and in compliance with deadlines.  His new supervisors further advised Shalley that they expected him to report to work at 8:30 a.m. each day.  They also informed Shalley that his failure to comply with their attendance expectations would be grounds for his termination from employment with Fleet. (See July 27, 2000 Memo to File, attached hereto as Exhibit "9"; Plaintiff's Dep., Ex. 3, p. 203-05).

24.     Like Supervisors Healy and Beavers before him, Farrell soon became dissatisfied with Plaintiff's performance.  On July 27, 2000, Farrell met with Shalley to review the status of Shalley's assignments.  Farrell pointed out that due to Plaintiff's failure to follow directives, the

projects were behind schedule. Farrell advised Shalley that the projects had to be completed by 10:00 a.m. on July 28, 2000. Farrell further advised Plaintiff that he needed to be prepared to meet with Farrell on July 28, 2000. (See July 27, 2000 Interoffice Memorandum, attached hereto as Exhibit "10").

25.     On July 27, 2000, Plaintiff took a three-hour lunch despite the fact that he was behind schedule on his work assignments and despite the impending July 28, 2000 deadline. (Plaintiff's Dep., Ex. 3, p. 206).

26.     On July 28, 2000, Plaintiff failed to report to work and also failed to meet Farrell's July 28th deadline. Further, the work Shalley had completed to that point on those assignments was replete with errors. (See July 31, 2000 Interoffice Memorandum, attached hereto as Exhibit "11"; Plaintiff's Dep., Ex.3, p. 207).

27.     On July 31, 2000, Fleet terminated Plaintiff's employment because of Shalley's tardiness and his failure to meet job expectations. (Plaintiff's Dep., Ex. 3, pp. 208-210).

## IV.   LEGAL ARGUMENT

### A.    Summary Judgment Standard

A district court may enter summary judgment where there are no genuine issues as to any material fact and one party is entitled to judgment as a matter of law. White v. Westinghouse Electric Co., 862 F.2d 56, 59 (3rd Cir. 1988). "The inquiry is whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that a party must, as a matter of law, prevail over the other." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

The moving party has the initial burden of identifying evidence which it believes shows an absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 324

(1986); <u>Childers v. Joseph</u>, 842 F.2d 689, 694 (3rd Cir. 1988). The moving party's burden may be discharged by demonstrating that there is an absence of evidence to support the non-moving party's case. <u>Celotex</u>, 477 U.S. at 325. Once the moving party satisfies its burden, the burden shifts to the non-moving party, and must go beyond its pleadings and designate specific facts by use of affidavits, depositions, admissions, or answers to interrogatories showing that there is a genuine issue for trial. <u>Id</u>. at 324. Moreover, when the non-moving party bears the burden of proof, it must "make a sufficient showing to establish the existence of [every] element essential to that party's case." <u>Equimark Commercial Fin. Co. v. C.I.T. Financial Services Corp.</u>, 812 F.2d 141, 144 (3rd Cir. 1987) (quoting <u>Celotex</u>, 477 U.S. at 322).

Summary judgment must be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." <u>White</u>, 862 F.2d at 59 (quoting <u>Celotex</u>, 477 U.S. at 322). The non-movant must specifically identify evidence of record, as opposed to general averments, which support his claim and upon which a reasonable jury could base a verdict in his favor. <u>Celotex</u>, 477 U.S. at 322. The non-movant cannot avoid summary judgment by substituting "conclusory allegations of the complaint…with conclusory allegations of an affidavit." <u>Lujan v. National Wildlife Foundation</u>, 497 U.S. 871, 888 (1999).

**B.    Plaintiff's FMLA "Equivalent Position" Claim is Barred by the Statute of Limitations.**

In paragraphs 1 through 18 of his Complaint, Plaintiff appears to allege that Fleet violated the FMLA by failing to restore him to an equivalent position after he returned from his FMLA leave. In Plaintiff's deposition testimony and in the allegations of his Complaint, it is undisputed that Plaintiff returned from FMLA leave in May 2000. At that time, Plaintiff was placed in a position he argues was not equivalent to the position he had when he left on his

FMLA leave.   The following excerpts from Plaintiff's Complaint clearly indicate that Plaintiff

was aware of his FMLA claim in May 2000:

>   12.   The Plaintiff **returned to work at some time in May 2000—**
>   twelve weeks after his family medical leave began.
>
>   \*\*\*
>
>   15.   Prior to leaving on family medical leave, as noted above, the
>   plaintiff had been employed by the defendant(s) as a financial
>   analyst, but when the plaintiff returned to his employment with the
>   defendant(s) in **May of 2000, he was given a low-level**
>   **production job which was not equivalent** to director of analysis
>   and it was far below that job on the proverbial organizational chart
>   or on what would be considered  an organizational chart.
>   [emphasis added]

Plaintiff's claim is barred by the applicable statute of limitations.   The FMLA requires a

Plaintiff to file suit "not later than two years after the date of the last event constituting the

alleged violation for which the action is brought."   29 U.S.C.A. §2617(c)(1) (West 2001).

Plaintiff's deposition testimony and the allegations in his Complaint make it clear that Plaintiff

considered the position he was assigned in May 2000—immediately after his FMLA leave

ended—not to be equivalent.   Thus, the "trigger date" for the running of the two-year limitations

period was May 12, 2000.

The FMLA entitles eligible employees of employers meeting certain statutory criteria to

12 weeks of leave during any 12-month period in the event of "a serious health condition that

makes the employee unable to perform the functions of the position of such employee."   29

U.S.C.A. §2612(a)(1)(d) (West 2001).   An employee returning from leave properly taken under

the FMLA is entitled either to be restored to his or her former position or placed in an equivalent

position in terms of benefit, pay, and other conditions of employment.   29 U.S.C.A. §2614(a)(1)

(West 2001).   In the present case, Plaintiff did not file his Complaint alleging violations of

FMLA until June 12, 2002, fully one month after the expiration of the statute of limitations for his claim alleging Fleet failed to restore him to an equivalent position as required under the FMLA.  Thus, his claim under the FMLA is time barred.

As set forth more fully below, even if Shalley had filed his Complaint prior to the expiration of the statute of limitations, there is no merit to his claim that he was not restored to an equivalent position upon his return from FMLA leave.  However, before even reaching the merits of that claim this Court has an independent ground to dismiss Shalley's "equivalent position" claim under the FMLA inasmuch as Shalley has conceded that he knew or should have known that Fleet had not, allegedly, restored him to an "equivalent position" immediately upon his return from FMLA leave in May 2000.  Accordingly, he is estopped, both from his deposition testimony and from the statements in his Complaint, from alleging that his claim was filed prior to the expiration of the statute of limitations.

### C.    Shalley Has Conceded Fleet Returned Him to an Equivalent Position After the Expiration of His FMLA Leave.

The FMLA requires that an employer restore an employee to his or her same position or to an equivalent position with equivalent benefits, pay, and other terms and conditions of employment.  29 U.S.C.A. §2614.  The regulations provide that an "equivalent position" must have the same pay, benefits, and working conditions.  It must involve the same or substantially similar duties and responsibilities which entail equivalent skills.  Importantly, however, the requirement that an employee be restored to the same or equivalent job with the same or equivalent benefits, terms, and conditions of employment does not extend to "intangible immeasurable aspects of the job."  The perceived loss of potential for future promotional opportunities, for example, is not encompassed in equivalent pay, benefits, and working conditions.  29 C.F.R. §825.215(f); see also Lempres v. CVS, Inc., 916 F.Supp. 15 (D.D.C.

1996).  In <u>Patterson v. Alltel Info Services, Inc.</u>, 919 F.Supp. 500 (D. Me. 1996), a district court in Maine held that the FMLA does not "guarantee employees that they will perceive similarly strong support from their managers before and after leave, or that they will receive similarly strong performance evaluations before and after leave."  <u>Id</u>. at 505.

Based on the above-cited case law, therefore, Shalley's subjective belief that his new position was not "equivalent" is insufficient to withstand summary judgment.  As more fully set forth in Defendants' Statement of Undisputed Facts, *supra*, Shalley conceded that his reassignment to Jack Nui's team entitled him to the same pay, benefits, and grade level as the position he had previously held on Jeff Healy's team prior to his FMLA leave.  Moreover, when Shalley was reassigned to work for Mr. Farrell and Ms. Arthur, he conceded during his deposition that his salary and grade level remained unchanged.  Thus, legally and factually, Shalley's claims are without merit.

Section 2614 of the FMLA provides that "any eligible employee who takes leave under Section 2612 of this Title for the intended purpose of the leave shall be entitled, on return from such leave (A) to be restored by the employer to the position of employment held by the employee when the leave commenced; or (B) to be restored to an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment."  29 U.S.C. §2614(a)(1).  However, an employee returning from FMLA leave does not have an absolute right to restoration in the same or an equivalent position.  The regulations promulgated under the FMLA provide that "[a]n employee has no greater right to reinstatement or to other benefits and conditions of employment than if the employee had been continuously employed during the FMLA leave."  29 C.F.R. §825.216(a).  In fact, if an employer can show that the employee would not otherwise have been employed at the time reinstatement is requested, the

employer can deny restoration to employment and still be in full compliance with the requirements of the FMLA.  Id.

In this case, although a major reorganization took place during Plaintiff's FMLA leave, Fleet went out of its way to place Shalley in an equivalent position when he returned to work. Even when reading the facts in the light most favorable to the Plaintiff, it is clear from Plaintiff's deposition testimony that he was aware as early as January 2000, the month prior to his injury for which he took FMLA leave, that his employer was contemplating a major reorganizational change whereby its new product development/customer information division would be merged with Fleet's CDRM Division.  Moreover, while he was out on FMLA leave, on March 8, 2000, Plaintiff received a call from Mr. Healy wherein his supervisor explained the implementation of the major reorganizational change and that Plaintiff was to be reassigned to Jack Nui's team within Fleet's CDRM Division and that he would now report to Anthony Beavers.

The main reason for Plaintiff's reassignment was the fact that the Smartmove work was now under Jack Nui's authority, and given Plaintiff's past experience with Smartmove, he would also be reassigned.  Significantly, Plaintiff was not the only person reassigned due to the reorganization.  Plaintiff conceded as much at his deposition.  Thus, not only was Plaintiff restored to a position which was equivalent in every legal respect, including the same salary, grade level, and benefits, but Plaintiff's previous position no longer existed due to the reorganization which was contemplated prior to Shalley's FMLA leave and implemented during Shalley's FMLA leave.  Accordingly, Shalley's "equivalent position" claim under the FMLA must fail and summary judgment is appropriate.

**D.** **There is No Causal Connection Between Plaintiff's FMLA Leave and His Termination.**

Although inartfully drafted and not in any way directly stated in his Complaint, a most generous reading of paragraph 23 of Plaintiff's Complaint arguably sets forth a retaliation claim when Plaintiff attempts to link his termination on July 31, 2000, with his FMLA leave from February to May 2000. As more fully set forth below, however, Plaintiff's "retaliation" claim is without merit, and it, too, should be dismissed with prejudice.

In order to prove a *prima facie* case of retaliation under the FMLA, Shalley must show: (1) he is protected under the FMLA, (2) he suffered an adverse employment action, and (3) a causal connection exists between the adverse decision and Plaintiff's exercise of his or her FMLA rights. Baltuskonis v. U.S. Airways, Inc., 60 F.Supp.2d 445, 448 (E.D. Pa. 1999) (*citing* Oswalt v. Sara Lee, 889 F.Supp. 253, 258-59 (N.D. Miss. 1995) *aff'd* 74 F.3d 91 (5th Cir. 1996). Under Section 105(a)(2) of the FMLA, 29 U.S.C.A. §2615(a)(2), it is unlawful "for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter." Id. "The proper analysis for FMLA section 105(a)(2) claims is the McDonnell Douglas burden shifting approach. Id.

In this case, Shalley, during his deposition testimony, failed to offer any evidence that a causal connection existed between his termination and his exercise of his rights under the FMLA. Accordingly, his claim in paragraph 23 of his Complaint must fail. Fleet terminated Shalley because of his poor performance, poor attendance record, and his inability to follow directions fully two and a half months after he returned from FMLA leave. Even if that ten-week gap was considered "close in time" to his FMLA leave, the mere fact that a termination occurred close in time to an FMLA leave is not sufficient to carry Plaintiff's burden. See Baltuskonis, 60 F.Supp.2d 228-50; Bond v. Sterling, Inc., 77 F.Supp.2d 300, 304 (N.D.N.Y. 1999); Dillon v.

Carleton, 977 F.Supp. 1155, 1160 (M.D. Fla. 1997) ("the FMLA is not a shield to protect employees from legitimate disciplinary action by their employers if their performance is lacking in some manner unrelated to their FMLA leave."), aff'd 161 F.3d 21 (11th Cir. 1998).

Even if Shalley were to establish a *prima facie* case under the FMLA (which he cannot), his claim still would fail because he has not offered sufficient evidence of pretext in response to Defendants' legitimate reasons for termination.  In a case very similar to this action, the U.S. District Court for the Northern District of Illinois held that poor performance, excessive absences and tardiness, and excessive personal phone calls constituted legitimate, non-discriminatory reasons to terminate the Plaintiff.  McCowan v. VOP, Inc., 1995 WL 519818 (N.D. Ill. 1995). Evidence that Plaintiff's performance was generally satisfactory is insufficient because the issue is not whether the employer was correct in its assessment of the Plaintiff, but whether the employer was honest in saying that it discharged the Plaintiff for the reasons it has given.  Id.

Like the Plaintiff in McCowan, Shalley merely disagrees with Fleet's decision without producing any evidence that the reasons for his termination are pretextual.  Accordingly, this Court should grant summary judgment for the Defendant.  See Hodgens v. General Dynamics Corp., 144 F.3d 151 (1st Cir. 1998) (finding that the Plaintiff did not cast doubt on the defendant's legitimate, non-discriminatory reasons for his layoff); Munizza v. State Farm Mutual Auto Insurance Co., 103 F.3d 139 (Table) 1996, U.S. App. LEXIS 32870, *11 (9th Cir. 1996) (finding no pretext where poor performance was corroborated by Plaintiff himself); Bond v. Sterling, Inc., 77 F.Supp.2d 300, 304 (finding that the Plaintiff failed to present competent evidence of pretext); Chaffin v. John H. Carter Co., 1998 WL 19624, *4 (E.D. La. 1998) (finding that the Plaintiff failed to produce evidence from which a reasonable fact-finder could infer that the Defendants lied); Garcia v. Fullbright & Jaworski, L.L.P., 1996 WL 544371 (S.D. Tex. 1996)

16

(finding that the articulated, non-discriminatory reasons for termination were not pretextual because poor performance was consistent and well document).

## **CONCLUSION**

Even when taken in the light most favorable to the Plaintiff, the undisputed facts in this case clearly establish that Fleet did not violate the FMLA in any respect. Accordingly, Shalley's Complaint and the allegations against Fleet should be dismissed in their entirety. First, Shalley's claim that he was assigned to a position which was not "equivalent" is time barred under the two-year statute of limitations applicable to FMLA claims. Shalley was aware of his new position and his new assignment when he returned to work on May 12, 2000. Nevertheless, Shalley waited until June 12, 2002, fully one month after the expiration of the two-year statute of limitations, to file his Complaint. Second, even if Shalley had filed a timely Complaint, his FMLA claim must be dismissed in its entirety because Shalley, himself, has conceded that the job to which he was reassigned after his FMLA leave left him at the same grade level, the same benefits level, and the same salary as the job he occupied prior to his leave. Moreover, Shalley was not reassigned as a result of his FMLA leave. To the contrary, Shalley, like many other employees in the credit card services division, was reassigned as a result of a major reorganization that took place during March 2000, while Shalley was on leave. Finally, even if this Court were to give a generous reading to paragraph 23 of Plaintiff's Complaint, Shalley has not set forth nor can he set forth sufficient facts to link his termination from employment with Fleet to his FMLA leave. Fleet terminated Shalley for legitimate business reasons. Specifically, Shalley's termination was the direct result of his inability to conform his behavior and to respond to repeated warnings about his tardiness, absenteeism, and substandard work performance. The 2½-month gap in time between Shalley's FMLA leave and his termination combined with the

numerous job performance warnings unheeded by Shalley both prior to and after his FMLA leave lead to the inexorable conclusion that Fleet's termination of Shalley was not, in any manner, a violation of the FMLA.  Accordingly, summary judgment is appropriate.


Respectfully submitted,



_____
Maureen P. Fitzgerald
Melissa B. Gorsline