IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PERRY SHALLEY, | : |
| | : |
|     Plaintiff | : |
| | : |
|     vs | : CIVIL ACTION NO.  02 CV 4709 |
| | : J.  Green |
| FLEET CREDIT CARD SERVICES, LP | : |
| and FLEET CREDIT CARD, LLC | : |

## PLAINTIFF'S ANSWER TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

1. Admitted.

2. Admitted.

3. Admitted.

4. Denied. The plaintiff was not returned to the equivalent position. Although he was promised such a position, he did not receive it.

5. Denied.

6. Denied.  The new position when he returned did not afford him the same bonus as the old position and it consisted of different duties with less responsibility.  The defendant had positions more akin to his prior position but did not give him one.

7. Denied.  Plaintiff does deny and did deny in his deposition that he received warnings about tardiness, absenteeism and poor performance prior to his taking FMLA leave with the exception of one complaint about a mistake.  His work evaluation for the year before he took FMLA leave was satisfactory.  The

defendant is incorrect in its assessment of the plaintiff's claim with reference to his termination being not related to FMLA claim. Part of this claim is that the termination was related that FMLA leave. However, the major and significant part of his claim is that the Plaintiff was not given an equivalent job when he returned from FMLA leave, and he could have been given one. Although an equivalent job was available and although he requested it, the defendant did not give him an equivalent position.

8. The plaintiff will rely on his memorandum of law, his deposition and the Complaint filed. In addition, the plaintiff had requested the depositions of some of Defendants' employees but there were not produced when the plaintiff's deposition was taken. Therefore, the defendants' request for summary judgment is premature.

WHEREFORE, the plaintiff respectfully requests that the Court deny the defendants' request for summary judgment.

            SOLOMON SHERMAN & GABAY


            By:_____
              Lawrence Solomon, Esquire
              Attorney for Plaintiff
              Attorney I.D. No. 04259

              1207 Chestnut Street - 5th Floor
              Philadelphia, PA 19107
              (215) 665-1100

*IN THE UNITED STATES DISTRICT COURT*
*FOR THE EASTERN DISTRICT OF PENNSYLVANIA*

| | |
|---|---|
| PERRY SHALLEY, | : |
| | : |
| Plaintiff | : |
| | : |
| vs | : CIVIL ACTION NO. 02 CV 4709 |
| | : J. Green |
| FLEET CREDIT CARD SERVICES, LP | : |
| and FLEET CREDIT CARD, LLC | : |

**PLAINTIFF'S SUPPORTING MEMORANDUM OF LAW**
**IN RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

This action has been brought under the Family and Medical Leave Act (FMLA). In February 2000, the plaintiff injured his back. His injury was not related to his employment. He was placed on FMLA leave from February 21, 2000 to May 12, 2000.

At the time the plaintiff left on FMLA leave, his employer, Fleet, was making organizational changes and the plaintiff was informed while he was out on leave that he would be reporting to a new supervisor. It is the plaintiff's position that when he returned to work the new position was not the equivalent of the old position either in duties or in wages. It is his claim that although the base salary remained the same he was no longer in a position to earn the $16,000 bonus he had earned in the previous year, 1999.

He complained he was under the impression that he would be given a job which was the equivalent of his old job. He complained, and as was usually done when an employee was dissatisfied with his transfer, the plaintiff unsuccessfully

applied for other jobs after he returned but was unsuccessful. After he unsuccessfully applied for other positions, Mr. Shalley began to realize that Defendant was not going to allow him to transfer to an equivalent position.

The employer's other defense is that the plaintiff was terminated on July 31, 2000 for legitimate business reasons, to wit that he was continually late and that his job performance was subpar. There are several answers to this particular defense. Because the claimant was not returned to an equivalent position, the employer has no cause to complain that it was not happy with the way he was performing other work. The plaintiff feels that the employer's complaints about his coming in late or when the employer asked him to (coming in at 9:00, 9:30 or 10:00 rather than 8:30 a.m.) was overblown and being used as an excuse because the plaintiff worked longer hours than most employees, and the employer never complained before his return from FMLA leave.

The claimant takes issue with the employer's allegations with reference with a subpar job performance and did so continually during the course of his deposition. The plaintiff's job performance would not be relevant with regard to his claim.

All of the above, along with a discussion of the statute of limitations will be covered hereinafter. Although Defendant has numbered part of its memorandum, the Plaintiff prefers to answer the issues raised without having to discuss everything in the order set forth by Defendant, which to some extent puts its argument in a more favorable light than the plaintiff feels it deserves.

The plaintiff's defense to the instant Motion is as follows:

1) he was returned to a job which was different from the job that he had before;

2) there were jobs that were similar, better or equivalent, that were available, but the defendant failed to make any of those jobs available to him;

3) plaintiff was led to believe that the matter would be rectified because he could apply for another job within the organization. It was at least a month later before he realized that he wasn't being given the equivalent jobs; and

4) the statute of limitations did not run.

Fleet is attempting to justify its own improper treatment of Mr. Shalley by stating that it does not really matter because he was terminated for cause. However, there are two answers to this: Mr. Shalley, throughout his deposition, indicated that his termination was not warranted and explained that the allegations of improper performance were incorrect; even if Mr. Shalley did not properly perform the job that was given to him when he returned to work, this was not the job that he was supposed to have and, therefore, when he realized that he was not going to be properly treated, he had a right to quit and bring this action. Therefore, his termination is irrelevant because he could have simply resigned.

With regard to Mr. Shalley not being an equivalent job, he testified that when he returned to Fleet he was not given a job which would afford him the opportunity to earn a $16,000 bonus as he had earned in the year 1999. See

Plaintiff's deposition transcript of December 26, 2002, attached hereto as Exhibit "A" (Dep., Ex. A, pp. 92-95, 114, 162).

During July, 1999, he was given a salary increase plus a target bonus of 20% annually (Dep., Ex. A, pp. 92-95). He earned the full bonus for 1999 (Dep., Ex. A, p. 114). The bonus structure was changed upon Mr. Shalley's return (Dep., Ex. A, p. 162).

In addition to the above, Mr. Shalley was demoted from manager to analyst (Dep., Ex. A, pp. 163-164). It does not matter what the job title was. What matters is what his substantive duties were. Fleet, in its Motion, indicates that it believes Mr. Shalley was returned to a position similar to his prior position when he actually testified that he was demoted. Fleet has attempted to equate Mr. Shalley's post FMLA leave job which required him to use SmartMove to the job he had when he left. Mr. Shalley, however, testified that he used SmartMove a lot in a position that he held prior to the one he held when he left on FMLA leave. As Mr. Shalley pointed out, he used SmartMove when he was involved or assigned to CDRM until given another position in the new product development department (Dep., Ex. A, pp. 100, 101, 103, 104, 110). Mr. Shalley was involved with SmartMove 75% - 80% of the time while he was in CDRM (before he moved to new product development). Once he moved to new product development . . . "I was not involved in the same capacity at all." (Dep., Ex. A, pp. 103, 104, 109-110). However, when Mr. Shalley returned from FMLA leave, his new job dealt with SmartMove (Dep., Ex. A, pp. 168-169). This was not the only change. His

new job was " . . . on a much junior level tha[n] I had previously . . . before I moved to new product development." ("than" had been typed by the reporter as "that"). (Dep., Ex 1., p. 168, lines 5-11).

In addition to the foregoing, prior to Mr. Shalley's taking FMLA leave, he worked with many different people and had some supervisory duties with regard to others, but when he returned those duties were greatly diminished. (Dep., Ex. A, pp. 97-98, 105-106, 115-117). Prior to leaving on FMLA leave, he had also gone to some senior meetings. In his new product development job he worked for a Mr. Whittershine from July, 1999 through December, 1999 (Dep., Ex. A, pp. 95-96). Thereafter, until he left, he worked in the same department for Mr. Healy (Dep., Ex. A, pp. 121-136). Mr. Whittershine had also endeavored to requisition some other employees for Mr. Shalley to supervise (Dep., Ex. A, p. 116) and Mr. Shalley continued to manage consultants under Mr. Healy. (Dep., Ex. A, p. 141). When he returned from FMLA leave, no one reported to him. (Dep., Ex. A, p. 169).

Fleet does not state that Mr. Shalley's job had to be changed under the reorganization and Fleet is not entitled to a summary judgment.

Fleet argues that it went out of its way to place Mr. Shalley in an equivalent position when he returned. There is nothing in the record to indicate that Fleet did anything to try to restore Mr. Shalley to a similar position or any explanation why he was not restored to a similar position. Fleet argues that the plaintiff was not the only one who was reassigned. There is nothing in the record to show

what type of jobs other people were reassigned to and it certainly has no bearing on Mr. Shalley.

Fleet has cited 29 C.F.R. §825.215(f) which gives the employer an excuse to give the employee a different job when the change in job is "de minimus, intangible or unmeasurable."

However, under subsection (a) of that Rule, it states that the new position must be virtually identical to the former position in regard to pay, benefits, working conditions, duties and responsibilities. The Rule also states under subsection (c)(2), that an employee is entitled to have a bonus structure continued upon his return. It is clear that plaintiff's employer has not complied with the requirement that it attempt to return Mr. Shalley to his prior position.

The defendant claims that Mr. Shalley was terminated for cause and, therefore, he basically waived his rights to complain about the job. However, as noted above, that allegation, and it is merely an allegation, should not preclude Mr. Shalley from recovering. Although Fleet did produce some documents, some of which Mr. Shalley had not seen before, he does not agree that the termination of his employment was justified. Fleet has pointed to several documents in support of its position. Fleet attached as Ex. 4 to its Motion an Affidavit from Jeff Healy, stating that he was dissatisfied with Mr. Shalley's performance and lateness. Mr. Shalley has disagreed with what Mr. Healy has alleged and there is an issue of fact. Mr. Shalley agreed that Mr. Healy criticized him over one fairly small error. (Dep., Ex. A, pp. 141-143, 146-148). In regard to a criticism of his

hours, he stated he did not recall conversations about his hours except that he may have been asked about why he came in later (Dep., Ex. A, pp. 149-150).

Mr. Shalley was asked about prior negative reviews and comments but does not recall any complaints. He explained that he had not had any negative reviews from his prior supervisors but, in fact, had favorable reviews. (Dep., Ex. A, pp. 79-80, 113-114). Fleet attached Exhibit 5 to its Motion, which is an evaluation of Mr. Shalley by Mr. Healy, his supervisor, and as noted by Mr. Shalley in his deposition, Mr. Healy found in Mr. Shalley's overall performance rating that Mr. Shalley "Meets Expectations: Meets major job requirements. Performs duties in a fully satisfactory manner." There is nothing in this report that mentions lateness.

Fleet has attached Exhibit 7 to its Motion which appears to contain criticism of Mr. Shalley by Mr. Beavers, his supervisor when he returned from FMLA leave. Mr. Shalley explained that he disagrees with the criticism that was made (Dep. Ex. A, pp. 173-179; 181). Mr. Shalley answered the criticism. He disagrees with Mr. Beavers who he claims was a very difficult person to work with (Dep., Ex. A, p. 179). There is no reason why the Court should accept Mr. Beavers explanation over Mr. Shalley's explanation in a Motion for Summary Judgment. Mr. Shalley also stated that he did make certain writings in e-mail, but whatever he may have written is not available because of the way he was forced to leave (Dep., Ex. A, p. 181).

The employer has attached another document issued by Mr. Beavers on

July 21, 2000 which makes complaints about the time Mr. Shalley was coming to work and his work product. Mr. Shalley disagrees with him and denies that he did not complete usable material, and states that he believed he made all the deadlines as required. He stated that some of the variables that came from other people were incorrect but his work was satisfactory (Dep., Ex. A, pp. 183-188). Mr. Shalley stated that the time he arrived for work had improved (Dep., Ex. A, p. 188).

The employer has also attached Exhibit 10, which was P-6 at Mr. Shalley's deposition (Dep., Ex. A, p. 204). Mr. Shalley indicated that he had not seen this document before the deposition (Dep., Ex. A, p. 205-206). Therefore, since it was neither signed nor identified by anyone, it should not be in evidence. Although Mr. Shalley agreed that Mr. Farrell, the alleged author of the report, had indicated to him at some point that he was not meeting Mr. Farrell's expectations, there is no showing that he was not properly doing his job nor was Mr. Shalley asked whether he agreed that he did not properly do his job (Dep., Ex. A, pp.191, 204-205).

The final document touching on Mr. Shalley's performance was Exhibit 11, which was P-7 at Mr. Shalley's deposition (Dep., Ex. A, p. 205). Mr. Shalley indicated that he had not seen this document until recently. Mr. Shalley took issue with a substantial part of the report. Since there is no signature and there is no identification, this report should not be in evidence and not considered. Combining Mr. Shalley's testimony with the report itself would not give a basis for

terminating his employment.

The employer alleges that on July 27, 2000, the plaintiff took a three hour lunch. The plaintiff disagrees that he took a three hour lunch. (Dep., Ex. A, pp. 206-207).

The employer alleges the plaintiff failed to return to work on July 28, 2000. This is an allegation. However, Mr. Shalley states that he did not work that day because a water pipe burst at his house. That was not a sufficient reason to terminate his employment and does not excuse the employer's failure to return plaintiff to a position equivalent to the one he had before leaving on FMLA leave. Mr. Farrell in Exhibit 11 acknowledges that the plaintiff called to state that a water pipe had burst. Furthermore, except for July 31, 2000, the plaintiff was in at a time which averaged 8:30 a.m. as requested by the employer during the week of July 24-27, 2000.

Fleet claims that it terminated the plaintiff's employment on July 31, 2000 because of tardiness and a failure to meet job expectations. That is the defendants' claim. However, the plaintiff's explanation throughout the deposition creates an issue of fact.

There is, at worst, from Mr. Shalley's point of view, an issue of fact. With regard to the hours Mr. Shalley worked, per the foregoing, the complaints about his starting time are exaggerated. Mr. Shalley explained this had not been an issue until sometime after he returned to work. Toward the end his starting time improved in that he arrived earlier, and he disagreed with some of the complaints

in that regard. See discussion above (Dep., Ex. A, pp. 210-212). The employer has not commented on the fact that Mr. Shalley worked long hours.

In summary, part of what the employer points out as a basis for firing Mr. Shalley is not admissible and Mr. Shalley does not agree with most of the employer's allegations with reference to his job performance.

As an aside, one may wonder why Mr. Shalley was terminated. Speculating on this issue would not be determinative in deciding Fleet's Motion but perhaps there was some jealousy over the way Mr. Shalley had earned a substantial pay raise when he considered leaving at the time Fleet purchased Advanta (Dep., Ex. A, pp. 192-94). This was to be explored further in the deposition of the employees of Fleet.

Finally, there is the issue of the statute of limitations. Fleet claims the statute is two years and should have run on May 12, 2002. There are three reasons why the statute did not run: 1) a three year statute of limitations applies to this case; 2) Fleet was perpetrating a continuing wrong; and 3) Mr. Shalley had a right to believe that Fleet intended to rectify the situation. It was not until after June 12, 2000, that it would be reasonable to expect him to realize that Fleet was not going to rectify the situation.

It has been held that where the plaintiff contends that the defendant's action are willful that there is a three year statute of limitations. Miller v. Beneficial Management Corp., 977 F.2d 834 (3rd Cir. 1992); Sameric Corp. Del. Inc. v. City of Philadelphia, 142 F.3d 582 (3rd Cir. 1998); Settle v. Rodgers, 657

(E.D. Va. 1998).

Where willful breach has been alleged in the Complaint, there is a three year statute of limitations. <u>Miller</u> and <u>Sameric Corp.</u>, supra. The plaintiff has alleged in his Complaint, paragraphs 21 and 22, that defendants were aware of the requirements and provisions of the Family Medical Leave Act that it " . . . knowingly and willfully . . . " assigned or transferred the plaintiff a lower level job when he returned. See Plaintiff's Complaint, attached hereto as Exhibit "B." The plaintiff also alleged in paragraph 23, that although the defendant(s) knew of the provisions of the Family Medical Leave Act, "they knowingly and willfully terminated the plaintiff's employment in August, 2000 in order to avoid complying with the provisions of the said Family Medical Leave Act."

It has also been held that where the defendant's wrong is a continuing wrong, it tolls the statute. <u>Miller v. Beneficial Management Corp</u>, supra; <u>Sameric Corp. Del. Inc. v. City of Philadelphia</u>, supra. Mr. Shalley was not happy about his demotion and he complained to his employer (Dep., Ex. A, p. 160). When asked if Fleet usually affords an opportunity to people to transfer jobs when they are dissatisfied, he replied that it did (Dep., Ex. A, p. 160). However, the heads of the various departments made excuses to discourage him, thus precluding him from getting those jobs (Dep., Ex. A, pp. 195-199). It is clear that Mr. Shalley had no problems at Fleet prior to his taking FMLA leave and did not have anyone complaining about his job, but when he returned there was a concerted effort to get rid of him. Under the circumstances Fleet's conduct may be deemed to be a

continuing wrong, which continued until Mr. Shalley left Fleet's employ at the end of July, 2000.

In addition, while Mr. Shalley was working for Fleet after his return from FMLA leave, he was led to believe that he would be able to transfer to another department, when, in fact, it is clear that Fleet did not intend to transfer him anywhere with the same job responsibilities.  Fleet should be estopped from raising that the statute of limitations began to run during the time it lead the plaintiff to believe that he could transfer to a more suitable job.

In accordance with the foregoing, Defendants' Motion for Summary Judgment should be denied.

                                      Respectfully submitted,

                                      SOLOMON SHERMAN & GABAY

                              By:_____
                                      Lawrence Solomon, Esquire
                                      Attorney for Plaintiff
                                      Attorney I.D. No. 04259

                                      1207 Chestnut Street - 5th Floor
                                      Philadelphia, PA 19107
                                      (215) 665-1100

*IN THE UNITED STATES DISTRICT COURT*
*FOR THE EASTERN DISTRICT OF PENNSYLVANIA*

| | |
|---|---|
| PERRY SHALLEY, | : |
| | : |
| Plaintiff | : |
| | : |
| vs | : CIVIL ACTION NO.  02 CV 4709 |
| | : J.  Green |
| FLEET CREDIT CARD SERVICES, LP | : |
| and FLEET CREDIT CARD, LLC | : |

## ORDER

This cause came before the Court on Defendants' Motion for Summary Judgment.  The Court, having considered the papers submitted by the parties and having heard oral argument on the matter by the parties, hereby denies Defendants' Motion for Summary Judgment.


Done and Ordered this \_\_\_\_\_ day of _____, 2003:


_____
U.S.D.J.

## **CERTIFICATE OF SERVICE**

I, Lawrence Solomon, hereby certify that a copy of the foregoing Plaintiff's Answer to Defendants' Motion for Summary Judgment and Supporting Memorandum of Law was sent via U.S. first-class mail, postage prepaid, on February 25, 2003, as follows:

Maureen P. Fitzgerald, Esquire
Melissa B. Gorsline, Esquire
McKissock & Hoffman, P.C.
1700 Market Street - Ste. 3000
Philadelphia, PA 19103-3930

_____
Lawrence Solomon, Esquire