## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

PERRY SHALLEY,                          :
                                        :
            Plaintiff                   :
                                        :
      vs                                : CIVIL ACTION NO.  02 CV 4709
                                        : J.  Green
FLEET CREDIT CARD SERVICES, LP          :
and FLEET CREDIT CARD, LLC              :

## PLAINTIFF'S ANSWER TO DEFENDANTS'
## REPLY MOTION FOR SUMMARY JUDGMENT

The Defendants' Reply was basically a reiteration of the arguments made in its original Motion with the addition of some additional cases.  The Plaintiff still maintains his position that the Defendants are trying to turn issues of fact into conclusions of law which is not warranted because the facts either do not support the conclusions suggested or they are material facts that are in dispute and should be decided at trial.

The Defendants are claiming that the Plaintiff has glossed over the most important undisputed issue of fact that a major reorganization took place while Mr. Shalley was on leave (Reply Brief p.2.).  The Plaintiff did not gloss over this fact and Plaintiff's position is that he was demoted and that there were more appropriate jobs available to him.

The Defendants devote considerable space discussing how the Plaintiff's job was similar to his prior job and claim.  "Fleet ... placed Plaintiff in a position that was virtually equivalent to his prior position in every material respect" (Reply

Brief p.4).   As noted in the Plaintiff's Answer to the Motion for Summary

Judgment, Mr. Shalley not only was denied an opportunity to earn a $16,000.00

bonus he had previously earned but he was demoted from manager to analyst.

(Dep. 162-164)   He was given a job which required him to use a program called

"SmartMove" which he was not required to use in his previous position. (Dep.

103, 104, 109, 110; 168-169)   The job was on a much more junior level than his

prior position.  His supervisory duties were diminished. (Dep 95-98, 105-106,

115-117).  He did not attend senior meetings any more and his hours were

changed.  This is all covered in the Plaintiff's Answer and Memorandum.  The

Defendants have not argued that the Plaintiff's position was eliminated and that

there was no other similar position.  It is clear that the Plaintiff has set forth

sufficient facts to enable one to conclude that the position that he was given when

he returned to work was different and inferior.  It is up to the Defendants to now

show that there were no similar positions available and they have produced no

evidence to show that no similar position was available.  The Defendants have

not only ignored some of the differences between the Plaintiff's prior position and

the one he was given upon his return, but also tried to argue that the previous

numerical designation of the position was not changed.  This is irrelevant from a

substantive point of view.  It is obvious that they kept the numerical designation

the same so they could claim that it was the same type of job even though it was

not.  The only reason the Defendants gave for assigning Mr. Shalley, the Plaintiff,

his new position was because his "... past experience with a knowledge of

SmartMove, it made sense for Shalley to be reassigned so he could continue work with SmartMove". (Defendant's Motion p.6, ¶14). However, this was more like the job he had had before his last promotion which means it was a demotion. The Defendants totally ignore that the job was a demotion and they ignore the issue as to whether there was similar work available for the Plaintiff. Also, with regard to the bonus, the Defendants do not say that they changed the bonus structure for everyone. The Defendants had the burden of offering some evidence that it changed the bonus structure for everyone, but they failed to do so.

On page 5 of Defendants' Reply Brief, the Defendants state that it was the Plaintiff's burden to show that there were equivalent jobs. The Defendants have not claimed that there were no similar jobs. If the Defendants' defense is that there were no similar jobs or equivalent jobs then it should have presented some evidence rather than claim the Defendant was given a suitable job. The Plaintiff did explain that there were other jobs that he felt were better and were suitable to him, but he would have to apply for them (Dep. 194-196). He took the first step by going to the managers of the departments where those jobs were and was dissuaded by the various managers who would obviously have had some input into the transfer. (Dep. 196-199). Not only was Mr. Shalley discouraged, he was told either not to apply or that he should not go that route by at least two managers. Shree Pragada told him not to apply and Jack New who said "... he didn't want to go that route". (Dep. 198-199). Never do the Defendants say that

Mr. Shalley would have been given any of the jobs he referred to.

To support their position, the Defendants cite Hunt v. Rapides Healthcare System, L.L.C., 277 F.3d 753 (5th Cir. 2001). The Hunt case, supra is not really comparable to this case. In the Hunt case, the employee's day position was filled when she returned so she was given the same job during the night shift. Although she did not apply for the day shift when it later became available, the case was decided to a great extent because her job duties were not changed. (At 770). The "... position is not a demotion in duties or title ... did not affect the compensation ....". The court, at page 770, also held that when there is a loss of prestige, it constitutes a demotion. The court also stated "... different duties involving less interesting work, and less prestige, as well as less favorable working hours was an 'adverse employment action'....". With regard to Mr. Shalley's new position, his job did have less favorable hours, less interesting work and less prestige as well as a reduced potential to earn income.

The Court in Hunt, also stated that if working conditions were intolerable it would justify resignation. The factors to be considered were demotion, reduction in salary, reduction in job responsibility, reassignment to menial or degrading work, badgering, harassment or humiliation calculated to encourage resignation and an offer of unfavorable retirement. Most of the above elements were present in this case and therefore according to Hunt, Mr. Shalley would have been justified in resigning. Whether he was fired for cause or not should be deemed to be irrelevant.

**"B"**,

The Defendants argue that the Plaintiff is downplaying his poor performance and that it has not been shown that their motives were improper. Again, it should be noted that if the Plaintiff, after trying the new job and after inquiring about other positions, found his job intolerable then trier of fact could find (and probably would find) that he would have been entitled to resign under the circumstances oulined in <u>Hunt</u>,

Although the Defendants did not produce the witnesses requested for depositions and the Plaintiff's attorney unfortunately did not file a motion, the fact that the Defendants at this juncture appear to have more witnesses is irrelevant. Normally one is entitled to a jury instruction that the number of witnesses do not determine the case. The Defendants do not have any detailed statements from any of the witnesses they have referred to in support of their defense. Mr. Shalley's testimony is sufficient to create an issue of credibility and the Defendants are not entitled to a Summary Judgment. The Plaintiff has disagreed with some of the statements contained in the exhibits submitted by the Defendants and he has a right to have a trier of fact determine the issues of credibility.

The Defendants have cited several cases in support of a claim that it had a right to judge the Plaintiff's behavior and to fire him, indicating that the court should not second guess their assessment or management decisions. <u>Kelly v. Drexel University</u>, 94 F.3d 102, 109 (3rd Cir. 1966); <u>Ezold v. Wolfe, Block, Schorr</u>

& Solis-Cohen, 983 F.2d 509, 527 (3rd Cir. 1992); Davis v. Rutgers Cas. Ins. Co.,
964 F.Supp. 560, 573 (D.N.J. 1997).  The aforesaid cases were discrimination
cases and it is agreed that there are statements in these cases about the
similarities between discrimination and FMLA cases.

      However, the decisions not to hire, promote or to fire an employee is not an
issue which would normally arise in a FMLA case.  A sound business decision by
the Defendants that it would be better that the Plaintiff not work for them anymore
is not an FMLA defense and it does not negate the fact that they made no
attempt to return him to a job that was equivalent or nearly equivalent to his prior
job and that instead of moving him to a job that he said that he felt was more
suitable they moved him to other jobs, i.e. he had asked Mr. New about
transferring to a different position in his department, but instead was moved to
another department (Dep. 199).

      In the Kelly case, at 199, supra, the issue was discrimination.  The
claimant's job had been eliminated but there was no inquiry as to why his job as
opposed to others was eliminated.  There was no obligation to find him an
equivalent job and there did no appear to be one anyway.

      In the Ezold case, the issue was whether a law firm discriminated on the
basis of sex by not making one of it's employees a partner.  The Court evaluated
the evidence and decided that it was clear that the law firm's decision was based
on objective factors.  In the case subjudice the issue is whether the Plaintiff who
was entitled to the same or a similar job, should have been given a more suitable

job and whether the Defendants were unreasonable and ignored their responsibility. The Plaintiff does not claim that the employer did not have a right to terminate his employment. It is irrelevant whether the employer was justified in firing him. If equitable justification were the test, there would still be an issue of credibility in this case, but the issue in this case revolves around whether the Defendants should have transferred him to a job more equivalent to the one he had before he left on leave, not whether they were displeased with his performance in the new job. Normally, subjective displeasure is sufficient. However the issue in this case is whether the Defendants violated Mr. Shalley's FMLA rights, not whether they were displeased with his performance in a different job.

In the Davis case, supra, the Court held that a decision to terminate would be upheld if there is good faith and no proof of impermissible motives. However it should be noted that this standard came into play only with regard to discrimination. It is clear, as noted above, that where termination under Title VII is a factor, the employer cannot discriminate on the basis of sex and in an FMLA case, the employer who wishes to fire an employee cannot arbitrarily do so or improperly change the job when the employee returns. The difference between Title VII and FMLA claims is that in Title VII if a job is eliminated as a business decision, the employee may be terminated, but with FMLA even if a position is eliminated or given to someone else, the employer must look for an equivalent job for the employee. The Defendants herein are ignoring, or as they put it,

glossing over, that fact.  Again, as noted previously, the  Plaintiff is not obligated to take a job given to him in derogation of the FMLA standards.  As a corollary, he could have resigned at any time.  Therefore, the fact he was fired should be deemed irrelevant with regard to the Defendants' compliance with the FMLA.

The Plaintiff's view with regard to the statute of limitations is that the cases which were previously cited are sufficient to resolve that issue in his favor.

The Defendants have now cited some District Court cases from Kentucky and the District of Columbia.  Edwards v. Ford Motor Co., 179 F. Supp. 2d 714 (W.D. Ky 2001); Sampson vs. Citibank, 53 F.Supp. 2d 13 (D.D.C. 1999).

In the Sampson case, supra, the claimant clearly used up entitled FMLA leave which is a totally different issue than the one that confronts Mr. Shalley and thus, it was noted that the Plaintiff did not allege or prove any willfulness and so there was nothing in the record there from which a jury could determine that there was willfulness.

In the Edwards case, supra, the employee exhausted all FMLA leave in advance of her dismissal.

The import of both of the above two cases is that at some point the Plaintiff must have some evidence by which a court or jury might reasonably find a willful violation of the law.  In this case, it is clear that a jury would have that type of evidence.  There was a failure to try to find Mr. Shalley a more suitable job, a job that was more in line with his prior responsibilities.  The employer does not claim that there was no such job available.  Mr. Shalley claims that there were other

jobs that he felt were more suitable to him but was led to believe by the heads of the departments that there was not much point in him applying for those jobs.  In addition, while the employer claims that it tried to accommodate Mr. Shalley and that he violated the rules, it is clear that Mr. Shalley's version of what occurred and his explanation is different than the Defendants'.  He is therefore entitled to present his version of what happened to a jury which might then find that his employers' conduct toward him indicated that it wanted to get rid of him and it was therefore willful and placing him in different jobs was just a pretext to harass him.  Again, as noted previously, it is not the number of witnesses that one presents that determines who is right.  Credibility is for the trier of fact.

The Defendants also cite <u>Hanger v. Light County, et al.</u>, and attached a copy of the case.  The <u>Hanger</u> case, <u>supra</u> is a slip opinion and therefore not entitled to much weight.  Nevertheless, in the <u>Hanger</u> case, there was no showing that there was another job that might be available that the claimant could move into.  It was hoped that she would move onto another department.  The <u>Hanger</u> court also stated at p.4 that she "... failed to show that any Defendants knew or showed reckless disregard as to whether its conduct was prohibited by FMLA".  In the present case the Defendants agree that they know that changing one's position is normally a violation of the FMLA.  In view of the fact that there were better positions available as noted above and the Defendants' admit they were aware of the FMLA rules, it is clear that their act of putting him in a inferior position was improper and a willful disregard of his rights.

The Defendants cited Martin v. Nannie & Newborns, Inc., 3 F.3rd 1410, 1415 M.6 (10th Cir. 1993). In the Martin case, supra at 1410, 1415 the court discussed the continued course of conduct doctrine with regard to sexual harassment. It is obvious to a person that he or she is being sexually harassed and this makes sexual harassment a much different situation than Mr. Shalley encountered. It is the Defendants' burden to show that Shalley should have known that there were no other equivalent jobs available that were similar to his prior to June 12, 2000. No one said to Mr. Shalley that there were no similar jobs available. He had to find out for himself. There was no evidence that the employer sought to find a more suitable job for Mr. Shalley. Meanwhile, he continued his employment feeling and believing that he would be able to transfer to a more suitable job. As it turns out, and has been discussed above, Mr. Shalley later found out when he attempted to check with the department heads to obtain approval to transfer to another job in their departments that such a transfer by him was unwelcome and would not be accommodated or approved. The Defendants never indicated to the claimant when he returned that it would not agree to transfer him to a more suitable job. Therefore, he had a right to believe he could be transferred and there was a continuing violation tantamount to misrepresentation. The employer has not disputed Mr. Shalley's position about more suitable positions. There has been no statement other than the fact that Mr. Shalley's job was eliminated and they thought that it would be good to put him in a job position that dealt with SmartMove, a program that he utilized before he had

-10-

been promoted to his pre FMLA job.  In accordance with the foregoing there is

nothing in the <u>Martin</u> case, <u>supra</u>, that would support to the Defendants' request

for a summary judgment.

In accordance with the foregoing it is not only clear that the Defendant's

violated Mr. Shalley's rights, it is also clear that he has not breached the statute

of limitations and that both the continuing violations and willful conduct rules

apply.  The Defendants' improper conduct was made even clearer when they

tried to argue that Mr. Shalley post FMLA job was equal to his pre FMLA job.

Thus, the Plaintiff requests that the Court deny the Defendants' request for

summary judgment.

SOLOMON SHERMAN & GABAY


By:_____
          Lawrence Solomon, Esquire
          Attorney for Plaintiff
          Attorney I.D. No. 04259
          1207 Chestnut Street - 5th Floor
          Philadelphia, PA 19107
          (215) 665-1100