IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PERRY SHALLEY, : | |
| : | |
| Plaintiff : | |
| v. : | No. 02-CV-4709 |
| : | |
| FLEET CREDIT CARD SERVICES, LP, : | |
| and FLEET CREDIT CARD, LLC, : | |
| Defendants. : | |

**MEMORANDUM**

Green, S.J.                                                                                                    August         , 2003

Presently pending is Defendants' Motion for Summary Judgment, Plaintiff's Response, and the Reply and Sur-reply thereto. For the foregoing reasons, Defendants' motion will be denied.

**BACKGROUND**

Plaintiff initially filed his Complaint in the Court of Common Pleas, Philadelphia County on June 12, 2002. The Complaint contained allegations that Defendant knowingly and willfully violated the Family and Medical Leave Act ("FMLA") by failing to return Plaintiff to a position that was equivalent to the position he held prior to being placed on leave under the FMLA. (Compl., ¶ 16). Plaintiff also alleges that Defendants terminated his employment in order to avoid complying with the provisions of the FMLA. (Compl., ¶ 23).

The undisputed facts of this case are as follows: Plaintiff was hired by Defendants' predecessor-in-interest as a Decision Support Analyst II on or about October 6, 1997. (Pl.'s Dep., pp. 12, 68-71). In May 1999, Defendants promoted Plaintiff to the position of Director of Analysis, a position which included both an increased salary as well as a targeted annual bonus of 20%. (Pl.'s Dep, pp. 94-95, 114-15). In mid-February 2000, Plaintiff injured his back, informed Defendants that he was not able to work, and was subsequently placed on leave under the FMLA. Id. . (Pl.'s Dep., pp. 36-38, 59-60).

In March 2000, while Plaintiff was on FMLA leave, his Manager prepared a formal evaluation of Plaintiff's performance for the period February 1999 through February 2000. (Defs.' Mot. Summ. J., Ex. 5). The Manager's appraisal states that Plaintiff's overall performance rating was a "3 - Meets Expectations: Meets major job requirements. Performs duties in a fully satisfactory manner." Id. The appraisal also noted that Plaintiff's punctuality/attendance was a "2 - Needs Improvement." Id. (The rating scale ranges from a high of 5, or "Outstanding," to a low of 1, "Does not meet expectations." Id.)

The parties also agree that while Plaintiff was on FMLA leave Defendant underwent a major reorganization and that as a result, Plaintiff's previous position was no longer available. Plaintiff was informed that upon his return to work, he would report to a different manager. (Defs.' Mot. Summ. J., Ex. 3, ¶ 7). Plaintiff returned to work from FMLA leave on May 12, 2000, reporting to his new manager. (Pl.'s Dep., pp. 164-166). Upon his return Plaintiff's base salary and grade level remained the same. (Id. at 164) Plaintiff asserts, however, that unlike his former position he was no longer able to earn a bonus and also claims that he no longer had supervisory responsibilities over Defendants' independent consultants. (Id. at 105-106, 108, 113, and 137). Shortly after his return, on May 23, 2000 Plaintiff's new manager expressed dissatisfaction with Plaintiff's performance, attendance, and tardiness. (Defs.' Mot. Summ. J., Ex. 7). On June 30, 2000 Plaintiff's new manager Issued a Formal Counsel regarding Plaintiff's areas of unacceptable performance. Id. Plaintiff, however, claims that prior to taking FMLA leave, he did not have an exact reporting time for work nor did he receive any reprimands regarding his work performance or timeliness. Plaintiff claims that his manager acknowledged and recognized that he worked longer hours than required and longer than most other employees. (Pl.'s Dep. pp. 140, 143, 170-73).

On July 21, 2000 Plaintiff received a Formal Reprimand from his new manager which stated that Plaintiff did not meet his job expectations. (Defs.' Mot. Summ. J., Ex. 8). He

was assigned to yet another manager in another department effective July 24, 2000. (Defs.' Mot. Summ. J., Ex. 9). Immediately upon reassignment to his last and final department, Plaintiff's met with his new managers regarding their expectations of his work and attendance. During the week of July 27, 2000 one of Plaintiff's new managers met with him to review the status of Plaintiff's assignments which Defendants found unsatisfactory. (Defs.' Mot. Summ. J. at 9). Defendants maintain that Plaintiff's employment was terminated on July 31, 2000 because of his tardiness and failure to meet job expectations. Plaintiff denies all of Defendants' allegations regarding his work performance, excessive lunch, and failure to report to work and/or call in to work.

**DISCUSSION**

Defendants contends that summary judgment is warranted because: (1) Plaintiff's FMLA claim that he was not returned to a similar or equivalent position is barred by the statute of limitations; (2) Plaintiff was returned to an equivalent position after the expiration of his FMLA leave; and, (3) there is no causal connection between Plaintiff's FMLA leave and his termination because Plaintiff was terminated for tardiness and poor job performance.

**II.        LEGAL STANDARD**

Summary judgment shall be awarded "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). An issue is "material" if the dispute may affect the outcome of the suit under the governing law and is "genuine" if a reasonable jury could return a verdict for the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The evidence presented must be viewed in the light most favorable to the nonmoving party. See American Flint Glass Workers Union, AFL-CIO v. Beaumont Glass Co., 62 F.3d 574, 578 (3d Cir. 1995).

**Family and Medical Leave Act**

One purpose of the FMLA is to provide leave for workers whose medical circumstances necessitate leave in excess of what their employers are willing or able to provide. 29 C.F.R. § 825.101. "Eligible" employees of a covered employer are allowed to take up to 12 weeks of leave for medical reasons. 29 C.F.R. § 825.100(a). Employees who take leave pursuant to the statute are entitled to return to the same or equivalent position and benefits as they had prior to taking the leave. An employer who denies an employee these entitlements is in violation of the FMLA. 29 U.S.C. §§ 2614(a)(1), 2615(a); 29 C.F.R. § 825.100(c). Victorelli v. Shadyside Hosp.,128 F.3d 184 (3d. Cir.1997).

**Statute of Limitations**

Defendants argue that Plaintiff's FMLA claim that he was not returned to an equivalent position upon his return from leave is barred by the statute of limitations. The FMLA provides a general two year statute of limitations for violations of its provisions. The FMLA also provides that plaintiffs have three years within which to bring claims for willful violations of its provisions. Id. 29 U.S.C.A. § 2917(c)(2). Defendant contends that because Plaintiff returned to work in May 2000, the statute of limitations began to run immediately upon Plaintiff's return, and had completely run by May 2002. Defendant claims that because Plaintiff did not institute this action until July 2002 his claims are time barred. However, "[t]he statute of limitations is an affirmative defense, and the burden of establishing its applicability to a particular claim rests with the defendant." Bradford-White Corp. v. Ernst & Whinney, 872 F.2d 1153, 1161 (3d. Cir. 1989) (quoting Van Buskirk v. Carey Canadian Mines, Ltd., 760 F.2d 481, 487, 498 (3d Cir.1985). Accordingly, Defendant must demonstrate that there is no genuine issue of material fact concerning the date the statute of limitations began to run on Plaintiff's claim, and must also demonstrate that any violation of the FMLA was not willful.

Drawing all inferences in Plaintiff's favor as must be done on summary judgment, I conclude that a genuine issue of material fact exists regarding both the date upon which any alleged violation of the FMLA occurred and whether the violation, if any, was willful. Although Plaintiff claims that he was not returned to an equivalent position immediately upon his return to work in May 2000, he was subsequently transferred to other positions, each of which he claims was unequal to his pre-FMLA position, eventually culminating in an August 2000 transfer to a final lower level and allegedly unequal position. He further claims that he was terminated in August 2000 to avoid Defendant's compliance with the provisions of the FMLA. A trier of fact could conclude that because Plaintiff was transferred several times after his return to work, that the last event constituting a violation of the FMLA was either the date of his final transfer and/or the date of his termination.[1] Both of these events occurred in August 2000. A jury could, therefore, find that the statute of limitations did not begin to run until August 2000. A jury could also find, based upon Plaintiff's several post-FMLA transfers and newly instituted requirements for reporting at a designated time, that Defendants' termination of him was knowing and willful, as retaliation for taking FMLA leave or in order to avoid complying with the provision of the FMLA.

**Equivalent Position Upon Return From FMLA Leave**

Defendant asserts that because Plaintiff was returned to a position at the same pay grade and level he held prior to taking FMLA leave, he was returned to an equivalent position.

The FMLA provides that:

> Except as provided in subsection (b) of this section, any eligible employee who takes leave under section 2612 of this title for the intended purpose of the leave shall be entitled, on return from such leave--

---

[1] Note that the FMLA provides that ". . . an action may be brought under this section not later than 2 years after the date of the *last event* constituting the alleged violation for which the action is brought." 29 U.S.C.A. § 2617(c)(1) (emphasis added).

> (A) to be restored by the employer to the position of employment held by the employee when the leave commenced; or
> (B) to be restored to an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment.

29 U.S.C.A. §2614(a)(1). The parties agree that due to Defendants' reorganization, Plaintiff could not have been returned to his former position because it no longer existed. However, even according to Defendants, the FMLA requires that he be restored to an equivalent position which encompasses the "... same or substantially similar duties and responsibilities which entail equivalent skills." (Defs' Mot. Summ. J. at 12.) Contrary to Defendants' argument, Plaintiff has not conceded that he was returned to an equivalent position. Instead, Plaintiff argues that all of his post-FMLA leave positions were inferior to the position held prior to taking the leave. In support, Plaintiff states that in his pre-FMLA position as the Director of Analysis he supervised a group of independent consultants and that after his return from FMLA leave he no longer had any supervisory duties. This Court cannot, as a matter of law, conclude that his post-FMLA positions, none of which included any supervisory duties, were equivalent to his pre-FMLA position. Moreover, Plaintiff also states that his pre-FMLA position entitled him to annual bonus of up to 20% of his salary, a significant addition to his salary. Athough his March 2000 review recommended that Plaintiff receive a 0% pay increase[2], as the Director of Analysis, Plaintiff was, upon a showing of exemplary performance, able to earn a substantial bonus. None of Plaintiff's post-FMLA leave positions afforded him the opportunity or possibility of earning a bonus regardless of his performance. Again, the Court cannot conclude as a matter of law, despite Defendants' assertions to the contrary, that the lack of ability to qualify for or earn a bonus is simply an intangible or immeasurable aspect of a job which should not be considered in determining whether Plaintiff was returned to an equivalent position. Therefore, the court cannot

---

[2] The Court notes that this review was completed while Plaintiff was out on FMLA leave and also that Plaintiff's then manager noted that there were limited resources available for increases. (See "Projects" note sheet, 1/20/00, attached to Pl's. Ans. to Mot. Summ. J.).

find as a matter of law that Plaintiff was returned to an equivalent position upon his return from FMLA leave.

**Causal Connection Between Plaintiff's FMLA Leave and Subsequent Termination**

Defendants' final argument is that Plaintiff failed to demonstrate a causal connection between his termination and the exercise of his rights under the FMLA. During his FMLA leave, Plaintiff received a satisfactory annual performance evaluation. His Manager's appraisal stated that Plaintiff's overall performance was fully satisfactory and that he met the major requirements of the job. According to documentation provided by Defendants Plaintiff was performing in a satisfactory manner as of March 2000. Id. Almost immediately upon his return to work from FMLA leave, specifically, eleven days thereafter, Plaintiff's new manager issued the first of several informal and formal counsels regarding Plaintiff's alleged dilatoriness, performance, and timeliness. After Plaintiff's return from FMLA leave, Plaintiff was required to report to work at a specific time although he states that he had not previously been required to do so. The discussions and negative evaluations continued until Plaintiff's eventual termination only three months later. This Court has been presented with sufficient evidence to create a genuine issue of material fact as to the cause for Plaintiff's termination. A jury must decide whether, after hearing testimony and reviewing evidence presented at trial, Plaintiff has established: (1) a causal connection between Plaintiff's FMLA leave and his subsequent termination; and (2) evidence of pretext in response to Defendant's asserted reasons for termination. The evidence regarding Defendants' present position that Plaintiff's post-FMLA leave performance became unsatisfactory immediately upon his return to work is in dispute with the satisfactory evaluation regarding his overall performance received only a few months prior in March 2000. A jury must determine this factual dispute. Moreover, although Defendants have provided the court with evidence that Plaintiff was late to work on several occasions, and was warned of the eventual outcome of further lateness, Plaintiff's claims that he did not have exact

reporting times prior to his FMLA leave.  This court cannot conclude as a matter of law that there is no causal connection between Plaintiff's FMLA leave and his subsequent requirements to report at an earlier time, his negative evaluations, and his termination.  The issue of whether Plaintiff was legitimately discharged for tardiness or in retaliation for taking FMLA leave is, under the circumstances, a genuine issue of material fact that must be decided by a trier of fact.

**CONCLUSION**

Summary judgment is not warranted under the circumstances because: (1) a genuine issue of material fact exists regarding the statute of limitations expiration; (2) this Court cannot conclude as a matter of law that Plaintiff was returned to an equivalent position after his FMLA leave; and, (3) this Court cannot conclude as a matter of law that there is not a causal connection between Plaintiff's FMLA leave and his termination.  These issues must be determined by the trier of fact, therefore, Defendant's motion for summary judgment will be denied.

An appropriate order follows.

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| PERRY SHALLEY, | : | |
| | : | |
| Plaintiff | : | |
| v. | : | No. 02-CV-4709 |
| | : | |
| FLEET CREDIT CARD SERVICES, LP, | : | |
| and FLEET CREDIT CARD, LLC, | : | |
| Defendants. | : | |

**<u>ORDER</u>**

**AND NOW**, this       day of August 2003, **IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment is **DENIED**.

BY THE COURT:

_____
CLIFFORD SCOTT GREEN